# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **MULENE MCCAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:11-CV-1476-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER,** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Mulene McCain ("Ms. McCain") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Ms. McCain timely pursued and exhausted her administrative remedies available before the

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. McCain was a 52-year-old female at the time of her hearing before the administrative law judge (hereinafter "ALJ").  (Tr. 20).  She has a high school education.  (Tr. 20).  Her past work experiences include employment as a sewing machine operator, a hand sander, and a warehouse worker.  (Tr. 20).  Ms. McCain claims she became disabled on November 1, 2007, due to eye problems, diabetes, a knot in her back, leg pain, and carpal tunnel syndrome.   (Tr. 120, 135).  Her last period of work ended on November 1, 2007, when she was laid off.  (Tr. 76, 135).

Ms. McCain filed concurrent applications for SSI and a period of DIB on April 4, 2008.  (Tr. 27, 120–130).  Her claims were denied by the Regional Commissioner on June 5, 2008.  (Tr. 101).  Ms. McCain timely requested a hearing, which was held on June 22, 2009, in Anniston, Alabama.  (Tr. 35).  The ALJ concluded that Ms. McCain was not disabled and issued his written decision denying her application for benefits on February 25, 2010.  (Tr. 14–31).  The ALJ's decision denying benefits became the final decision of the Commissioner when the Appeals Council denied Ms.

---

[2]   42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

McCain's request for review on April 21, 2011.  (Tr. 1–6).

Ms. McCain filed her Complaint on May 3, 2011, which asks this court to review the ALJ's decision.  (Doc. 1).  This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).

If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

---

[3]  The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

4

is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in

sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the claimant's impairment meets or equals an impairment listed
           by the Secretary;

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national
           economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir.

1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the

claimant has satisfied steps one and two, she will automatically be found disabled if

she suffers from a listed impairment.  If the claimant does not have a listed

impairment but cannot perform her work, the burden shifts to the Secretary to show

that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote*

*v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further

show that such work exists in the national economy in significant numbers.  *Id*.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. McCain has not engaged in substantial gainful activity

since November 1, 2007.  (Tr. 27).  He also found that the medical evidence

supported a finding that Ms. McCain's impairments of carpal tunnel syndrome,

diabetes, hypertension, disorder of the lumbar spine, and neuropathy were considered "severe" according to Social Security Ruling 96-3p. (Tr. 23, 27). The ALJ then held that those medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 Appendix 1, Subpart P, of the Social Security Regulations. (Tr. 23, 27).

The vocational expert testified that Ms. McCain would be precluded from returning to her past relevant work in light of her age, education, work experience, and residual functional capacity. (Tr. 26). The ALJ agreed and concluded that Ms. McCain's impairments prevent her from performing her past relevant work. (Tr. 27). However, the ALJ expressly found that Ms. McCain's testimony concerning her disabling limitations was not credible. (Tr. 27). Considering the evidence as a whole, the ALJ determined that Ms. McCain retains a residual functioning capacity to perform "light work" that allows for use of a cane with a sit/stand option, no more than occasional bending, and no balancing, stooping, kneeling, crawling, crouching, or climbing. (Tr. 27). The ALJ also concluded she should not work around unprotected heights or operate around hazardous machinery. (Tr. 27).

In reaching his conclusion, the ALJ made reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter "grids"). (Tr. 26). The ALJ acknowledged that Ms. McCain had certain non-exertional limitations that

prevented her from performing a "full range" of light work. Nevertheless, using the grids and Rule 202.13 as a framework for decision-making and considering the vocational expert's testimony that there are a significant number of unskilled, light-range jobs in the national and local economy that Ms. McCain could perform, the ALJ concluded that Ms. McCain was not disabled within the meaning of the Social Security Act. (Tr. 26–28).

Accordingly, the ALJ determined that Ms. McCain was not eligible for DIB because she was not disabled under §§ 216(i) and 223(d) of the Social Security Act. Likewise, he found she was not eligible for SSI because she was not disabled under § 1614(a)(3)(A) of the Social Security Act. (Tr. 28).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] Ms. McCain asserts that "the undisputed medical evidence of record

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

synthesized through testimony of a vocational expert merits a finding that [she] be found to be disabled under Rule 201.12 of the medical vocational guidelines – not rule 202.13 as found by the ALJ in his decision." (Doc. 8 at 2). Accordingly, she argues that the ALJ's decision denying her claim for disability benefits "is not supported by substantial evidence and should be reversed outright." (*Id.*). In the alternative, she contends that the case "should be reversed and remanded for proper consideration of the evidentiary record." (*Id.*). Her alternative argument is based on the contention that the ALJ improperly applied the Eleventh Circuit's pain standard. (Doc. 8 at 10–14).

In its review, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standards.

## I.    THE ALJ'S CONCLUSION THAT MS. MCCAIN WAS NOT DISABLED IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Ms. McCain first asserts that the ALJ erroneously applied the grids to her case. Ms. McCain relies on the medical opinions of Dr. Bohannon and Dr. Gordon, "as synthesized through the testimony of the vocational expert," to support her position that the ALJ should have classified her maximum sustained RFC as limited to sedentary work. (Doc. 8 at 9). As such, she argues she should have been found disabled under Rule 201.12, which applies to those who are limited to sedentary

work.  (*Id.* at 10).  Instead, the ALJ found her to be "not disabled" consistent with Rule 202.13, which applies to those who are limited to light work.

To resolve the issue concerning proper application of the grids, therefore, the court must first consider the propriety of the ALJ's RFC finding that Ms. McCain is capable of performing a modified range of light work.  After reviewing the ALJ's opinion and the medical record as a whole, the court finds that the ALJ's RFC determination is supported by substantial evidence.  Relatedly, the court finds that the ALJ properly applied the grids as a framework in reaching his conclusion that Ms. McCain is not disabled.

**A.   The ALJ's finding that Ms. McCain's maximum sustained RFC is for a modified range of light work is supported by substantial evidence.**

After carefully considering the medical record and the testimony at the hearing, the ALJ concluded that Ms. McCain could perform "light work which allows for the use of a cane; a sit/stand option; no more than occasional bending, no balancing stooping, kneeling, crawling, crouching or climbing."  (Tr. 25). He also found that "she should not work around unprotected heights or hazardous machinery." (Tr. 25). According to the Regulations, "light work" involves lifting no more than 20 pounds at a time and up to 10 pounds frequently. 20 C.F.R. § 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal

of walking or standing, <u>or</u> when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* (emphasis added).

Ms. McCain contends that "the outcome of the case would have been entirely different had the ALJ given proper consideration to Dr. Gordon's medical source statements (physical) as synthesized through the testimony of the vocational expert at the hearing." (Doc. 8 at 8). Moreover, she speculates that Dr. Gordon's opinion, combined with Dr. Bohannon's opinion, "as synthesized through the testimony of the vocational expert merit a finding that [she] can, <u>at best</u>, perform sedentary work . . ."[5] (*Id.* at 9 (emphasis added)). However, the ALJ articulated good cause for discounting the opinions of Dr. Bohannon and Dr. Gordon, and his reasons are supported by substantial evidence. In addition, the vocational expert's testimony concerning those doctors's medical opinions does not dictate a finding that Ms. McCain is limited to only sedentary work.

---

[5] The Regulations provide the following guidance concerning sedentary work:

> "Sedentary work" represents a <u>significantly restricted range of work</u>, and individuals with a maximum sustained work capability limited to sedentary work have <u>very serious functional limitations</u>. Therefore, as with any case, a finding that an individual is limited to less than the full range of sedentary work will be based on careful consideration of the evidence of the individual's medical impairment(s) and the limitations and restrictions attributable to it. Such evidence must support the finding that the individual's residual functional capacity is limited to less than the full range of sedentary work.

20 C.F.R. Pt. 404, Subpt. P, App. 2 (emphasis added).

### 1.   The ALJ articulated good cause for discounting the opinion of Dr. Bohannon.

Dr. William B. Bohannon, D.O., is a treating physician who examined Ms. McCain intermittently in 2007 and 2008.  (*See* Tr. 203-04, 241, 245-56, 272-75).  In September 2008, Dr. Bohannon indicated on a one-page food stamp application form to Alabama's Department of Human Resources that Ms. McCain was not mentally and physically able to work because of lumbar degenerative disc disease.  (Tr. 256). Ms. McCain contends that Dr. Bohannon's opinion, which was given to the state to assist in establishing her eligibility for food stamps, "indicate[s] his opinion that [Ms. McCain] is physically unable to work."  (Doc. 8 at 5).   However, the ALJ gave little weight to Dr. Bohannon's conclusory opinion on the food stamp form (which consisted of checking a box and briefly describing the condition) because he found that "it is not supported by his own medical records."  (Tr. 25).

The opinion of a treating physician as to the claimant's condition and its medical consequences is entitled to deference absent "good cause."  *See* 20 C.F.R. §§ 404.1527, 416.927 (1998); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists where the treating physician's opinion is not bolstered by the evidence or where the evidence supports a contrary finding.  *Id.*  Good cause also exists "where the doctors' opinions were <u>conclusory</u> or <u>inconsistent with their own</u>

medical records." *Id.* (emphasis added).  When an ALJ refuses to fully credit the claimant's treating physician, the reasons for doing so must be clearly articulated and supported by substantial evidence. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *Lewis*, 125 F.3d at 1440.

In his opinion, the ALJ described numerous specific treatments and the corresponding reports and clinical findings of Ms. McCain's treating physicians, including her visits with Dr. Bohannon. (Tr. 24).  Summarizing his findings, the ALJ concluded that Ms. McCain's "diagnoses have remained the same and the medical evidence establishes that her treatment has been <u>essentially routine</u> and <u>conservative</u> in nature."  (Tr. 24) (emphasis added).

The ALJ's decision to discredit Dr. Bohannon's opinion about Ms. McCain's ability to work because it conflicted with the broader range of his actual treatment notes as reflected in the medical record is supported by substantial evidence. Notably, Ms. McCain does not challenge the ALJ's summary of her medical records, nor his conclusion that her treatment with Dr. Bohannon has been essentially "routine" and "conservative."  Instead, Ms. McCain relies solely on Dr. Bohannon's conclusory statement – which essentially consisted of checking "No" in a yes-or-no box – in the one-page food stamp assessment form that he believed she was not

mentally or physically able to return to work.[6]

Moreover, the court notes that Dr. Bohannon's "opinion" in the food stamp paperwork is not supported or accompanied by any objective medical tests or records, which constitutes additional good cause to afford it less weight. *See* 20 C.F.R. § 404.1527(d)(2) (stating that a treating source's opinion on the nature and severity of a claimant's impairment(s) is only given "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with the other substantial evidence). Further, nothing in Dr. Bohannon's medical examination records supports Ms. McCain's position that she is only capable of performing sedentary work. Dr. Bohannon did not complete a medical source statement or other evaluation indicating his opinion on the level of work Ms. McCain would be able to perform, nor do his treatment notes indicate that she would be thus limited.

Additionally, Dr. Bohannon's conclusory notation that he believed Ms. McCain would not be able to return to work does not constitute a medical opinion that is determinative under the Social Security Act. The Commissioner has an independent

---

[6] Specifically, the form consisted of a questionnaire that posed the question: "Based on this individual's current medical condition, do you believe s/he is mentally and physically able to work?" The question was followed with a space to check "YES" or "NO." Dr. Bohannon checked "NO." A follow-up question included, "Date you expect this individual to be able to seek employment or return to work" and Dr. Bohannon answered "Unknown." (Tr. 256).

13

obligation to determine a claimant's RFC and, ultimately, the Commissioner, not the treating source, must determine whether the claimant is "disabled" for the purposes of the Act. *See* 20 CFR § 404.1527(e) ("Opinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."); *id.* § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled.").

For all these reasons, good cause exists to discredit Dr. Bohannon's opinion about Ms. McCain's inability to work, and the ALJ's decision to afford less weight to his opinion is supported by substantial evidence.

> **2.    The ALJ gave proper weight to Dr. Gordon's opinion and articulated good cause for discounting one nondispositive element of his assessment.**

Dr. David L. Gordon, M.D., is the internal medicine specialist who examined Ms. McCain on behalf of the Social Security Administration in April 2009. As the consulting physician, he completed a Medical Source Statement ("MSS") evaluating Ms. McCain's ability to perform work-related physical activities. (Tr. 263–69). Ms. McCain does not contest the findings or conclusions in Dr. Gordon's MSS. Instead, she argues that the ALJ failed to give "proper consideration to Dr. Gordon's medical

source statements (physical) as synthesized through the testimony of the vocational expert at the evidentiary hearing." (Doc. 8 at 8).

Dr. Gordon's MSS observed that Ms. McCain could lift and carry up to 10 pounds "continuously," 11 to 20 pounds "frequently," and 21 to 50 pounds "occasionally." (Tr. 263). Dr. Gordon further found that she could sit for three hours without interruption, for a total of six hours during an eight-hour workday; she could also stand or walk for 15 minutes at a time for a total of one hour in an eight-hour workday. (Tr. 264). Though he indicated that she required the use of a walker to ambulate, he concluded that she could walk up to 10 yards without a walker and that she could use her free hand to carry small objects. (Tr. 264). Dr. Gordon further opined that Ms. McCain could use both hands "frequently" for all functions, including reaching, handling, fingering, feeling, and pushing/pulling. (Tr. 265). Similarly, he found she could use both feet "frequently" to operate foot controls. (Tr. 265). He stated that she could "occasionally" climb stairs and ramps, but that she should "never" climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (Tr. 266). He also stated that she should "never" be exposed to unprotected heights or moving mechanical parts, but that she could "occasionally" operate a motor vehicle, be exposed to humidity, wetness, pulmonary irritants, extreme temperatures, and vibrations. (Tr. 267). In summary, Dr. Gordon concluded that Ms. McCain could

perform activities like shopping; traveling without a companion for assistance; walking without using a wheelchair, walker, cane, or crutches; using public transportation; climbing a few steps at a reasonable pace with the use of a hand rail; preparing simple meals and feeding herself; caring for personal hygiene; and handling paper and files. (Tr. 269).

These findings of Dr. Gordon in his MSS – which are not contested by Ms. McCain on appeal – substantially support the ALJ's RFC assessment that she is capable of performing a modified range of light work. *See* 20 C.F.R. § 416.967(b) (describing "light work" as involving lifting no more than 20 pounds at a time and up to 10 pounds frequently). Importantly, Ms. McCain does not point to any of Dr. Gordon's findings as supportive of an RFC finding limited to "sedentary" work only. Instead, Ms. McCain complains that the ALJ failed to give proper weight to Dr. Gordon's opinion "as synthesized through the testimony of the vocational expert at the evidentiary hearing." (Doc. 8 at 8). At the hearing, the vocational expert testified that "if [he] understood correctly," the maximum sustained exertional capacity for a person described by Ms. McCain's attorney after reading Dr. Gordon's limitations into the record would be "sedentary." (Tr. 94).

However, as the Commissioner points out, "[i]t appears that the VE did not understand the hypothetical question correctly, because nothing in Dr. Gordon's

16

medical source statement requires a limitation to sedentary work as defined in the regulations."  (Doc. 9 at 13).  Moreover, as previously emphasized, the RFC determination falls solely on the ALJ, not on a vocational expert or a consultative examiner.   20 C.F.R. §§ 404.1546(c), 416.946(c) ("If your case is at the administrative law judge hearing level . . . the administrative law judge . . . is responsible for assessing your residual functional capacity.").

In this case, the ALJ's clearly stated that he considered, as a whole, the opinion of Dr. Gordon but that he gave his conclusion about the necessity of using a cane or walker "limited weight" for at least four independent reasons.  (Tr. 25).  The ALJ described four specific examples of perceived inconsistencies between Dr. Gordon's opinion and the record:

> [T]he opinion expressed by the consultative physician, Dr. Gordon, that the claimant requires the use of a walker to ambulate is also given limited weight.  As noted above, Dr. Gordon personally observed Ms. McCain ambulating in the hallway without a walker.  Further, there is nothing in the medical record to indicate one was ever prescribed.  The claimant's testimony that she could walk less than a mile also contradicts the limitation suggested by Dr. Gordon in his medical source opinion.  And finally, the postural limitations suggested by Dr. Gordon appear inconsistent with his clinically determined range of motion limitations.  The inconsistencies in Dr. Gordon's report render it less persuasive.

(Tr. 25).[7]  These inconsistencies – which are not refuted by Ms. McCain on appeal –

led the ALJ to discredit Dr. Gordon's opinion in the MSS to the extent that he

indicated that the use of a cane or walker was medically necessary.

The court finds that these inconsistencies, supported by substantial evidence

in the record, constitute good cause for discrediting Dr. Gordon's opinion about the

medical necessity of a cane or walker.  Moreover, to the extent the ALJ specifically

discredited Dr. Gordon's opinion concerning the necessity of using a cane or walker,

it is a distinction without a difference because that finding did not ultimately impact

the ALJ's RFC assessment.  The ALJ later stated that he gave Ms. McCain the

"benefit of the doubt" concerning the necessity of a cane or walker despite his doubts

on the issue, and he factored that limitation into his RFC assessment and disability

finding.  (Tr. 25).[8]

The court also finds that the MSS of Dr. Gordon substantially supports the

ALJ's determination that Ms. McCain is capable of performing a modified range of

light work.

---

[7]  The court adds to this list of inconsistencies the internally inconsistent finding of Dr. Gordon within the MSS that the use of a walker is "medically necessary" (Tr. 264) and yet Ms. McCain is able to "ambulate without using a . . . walker." (Tr. 269).

[8]  Specifically, he stated, "[a]lthough I specifically determine as not fully credible, the claimant's need to ambulate with the walker, I have given her the benefit of the doubt in determining her [RFC]."

In sum, neither the medical records of Ms. McCain's treating physician, Dr. Bohannon, nor the MSS of her consulting physician, Dr. Gordon, support a finding that Ms. McCain is only capable of performing sedentary work. To the contrary, the opinions of these doctors, on the whole, substantially supports the ALJ's finding that she is able to perform a modified range of light work, accounting for her possible limitation of needing to use a cane or walker. As the court noted, Ms. McCain's argument that the vocational expert's testimony mandates a sedentary RFC finding is unpersuasive. Moreover, even if *some* evidence in the record supports an RFC limited to only sedentary work, the ALJ's decision will be affirmed so long as his "light work" conclusion is supported by substantial evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] ... even if the evidence preponderates against' the decision." (footnote omitted)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence. . . .").

### B.   The ALJ correctly applied Medical-Vocational Rule 202.13 in determining that Ms. McCain is not disabled.

Having determined that substantial evidence supports the ALJ's RFC assessment for a modified range of light work, the court accordingly concludes that the ALJ did not err in applying Rule 202.13 of the grids as his "framework" for decision-making.  Rule 202.13 contains the criteria relevant to Ms. McCain's age, history, and physical limitations.

"In this Circuit, the preferred method of demonstrating job availability where a plaintiff is unable to perform a full range of work at a given functional level or when a claimant has both exertional and nonexertional limitations is through the testimony of a vocational expert." *Byrd v. Apfel*, 2000 WL 726212, at *7 (M.D.  Ala. Apr. 28, 2000) (citing *Welch v. Bowen*, 854 F.2d 436, 439-440 (11th Cir. 1986)). However, despite this preference, the Supreme Court held, in *Heckler v. Campbell*, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983), that the use of grids to determine the existence of jobs in the national economy was a legitimate use of regulatory power derived from the Social Security Act.  As subsequently recognized by the Eleventh Circuit: "[t]he *Campbell* court also held that when the grids are properly used the Secretary need not introduce evidence of specific available jobs that the claimant is able to perform despite the existing impairments." *Gibson v. Heckler*,

762 F.2d 1516, 1520 (11th Cir. 1985) (citing *Campbell*, 461 U.S. at 468-472).

In the present case, the ALJ made a factual determination—based on the testimony of the vocational expert, his review of the entire medical record, and his assessment of the credibility of Ms. McCain's testimony—that Ms. McCain retained a residual functional capacity to perform a modified range of light work. (Tr. 25). Ms. McCain was 52 years old at the time of the hearing; therefore, she qualifies as a "Closely Approaching Advanced Age" (age 50–54) individual under the Regulations. Further, because she is a high school graduate and had performed only unskilled work in the past, the ALJ correctly applied Rule 202.13 of the grid regulations as a framework for his decision. Given these factors, under "Table No. 2 - Residual Functional Capacity: Maximum Sustained Work Capability Limited to Light Work as a Result of Severe Medically Determinable Impairments(s)," the ALJ appropriately concluded that Ms. McCain is not disabled using the grids as a guide. (20 C.F.R. § 404, Subpart P, Appendix 2).

Rather than directly applying the grids, the ALJ also correctly relied on the vocational expert's testimony as to the available jobs in the marketplace corresponding with Ms. McCain's particular physical limitations and RFC in conjunction with the grids. The ALJ's use of the grid as a "framework" in conjunction with the vocational expert's testimony and his own review of the medical

21

record and hearing testimony was appropriate, given Ms. McCain's combination of exertional and nonexertional limitations.  The introductory comments to the grids explain that the rules are to be applied more flexibly in such situations:

> . . . where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations <u>which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.</u>

20 C.F.R. Pt. 404, Subpt. P, App. 2 (emphasis added).

Based on the ALJ's RFC assessment, namely, his finding that Ms. McCain could perform a modified range of light work, he correctly referenced grid rule 201.12 as a "framework" for making his decision that Ms. McCain is not disabled. Accordingly, for all these reasons, the ALJ's decision of "not disabled" is supported by substantial evidence.

## II.   THE ALJ PROPERLY EVALUATED THE MEDICAL RECORD AND CORRECTLY APPLIED THE ELEVENTH CIRCUIT'S PAIN STANDARD.

Alternatively, Ms. McCain claims that the ALJ applied an improper legal standard in reaching his decision, specifically because he incorrectly applied the Eleventh Circuit pain standard. (Doc. 8 at 10–14). The court has carefully reviewed the record and finds that the ALJ assessed the credibility of Ms. McCain's subjective complaints of disabling pain under the appropriate legal standard, and his decision is supported by substantial evidence.

The pain standard "applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). To satisfy the Eleventh Circuit's pain standard, Ms. McCain must prove "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)). Relatedly, "[w]hile both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of

23

the pain itself." *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991).

Ms. McCain bases her argument that the pain standard was met on two treatments from Dr. Wael Hamo, M.D., a neurologist in 2007 – an MRI performed to assess her back pain and an electromyography ("EMG") study performed on her hand to assess her carpal tunnel syndrome. (Tr. 198, 199). Ms. McCain contends that "the MRI ordered by Dr. Hamo and the EMG ordered by Dr. Hamo provide evidence of a legitimate medical basis for [her] complaints of severe and debilitating back pain and severe and debilitating pain in the bilaterial extremities consistent with moderate to severe carpal tunnel syndrome." (Doc. 8 at 13). She also posits that "[t]hese findings are confirmed, at least in part, by Dr. Bohannon [Tr. 256] and Dr. Gordon [Tr. 264, 268]." *Id.*

The ALJ reviewed and considered "the entire documentary evidence of record, as well as the testimony at the hearing," and ultimately determined that Ms. McCain did not meet her burden of establishing disabling pain. More specifically, the ALJ explained:

> Although the documentary evidence establishes that [Ms. McCain] has underlying medical conditions capable of producing some pain and other limitations, substantial evidence as a whole does not confirm disabling pain or limitations arising from those conditions, nor does it support a conclusion that the objectively determined medical conditions are of

24

such severity that they reasonably could be expected to give rise to disabling pain and other limitations.

(Tr. 25). The ALJ then discussed his RFC determination and stated reasons for finding "not fully credible" Ms. McCain's claims of "disabling manipulative restrictions." One reason he stated for discrediting Ms. McCain's testimony of disabling pain in her hands was the consultative evaluation of Dr. Gordon, which found "that in Ms. McCain could use both hands frequently to reach, handle, finger, feel, and push and/or pull." (Tr. 25). The court notes that Dr. Gordon's assessment occurred several years after the MRI and EMG performed by Dr. Hamo. (Tr. 269).

The ALJ further concluded that "[i]f [Ms. McCain] complied with her assigned residual functional capacity, her pain is reasonably expected to impose no greater than mild to moderate functional limitations upon her ability to engage in basic work activities described in 404.1521(b) and 416.921(b). Any testimony or allegations otherwise are not credible." (Tr. 25–26).

In *Wilson v. Barnhart*, the Eleventh Circuit reversed the district court's decision that the ALJ improperly applied the pain standard and found that the ALJ's decision was supported by substantial evidence because "the ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th

Cir. 2002).  Akin to the standard set forth in *Wilson*, the ALJ's negative credibility

finding in this instance is supported by substantial evidence.

For example, as the ALJ explained in detail the inconsistencies in the medical

record regarding Ms. McCain's subjective complaints:

> The claimant's statements concerning her impairments and their impact
> on her ability to work are not credible in light of the medical history, the
> reports of the treating and examining practitioners, and the clinical
> findings made on examination.  As indicated above, Ms. McCain was
> referred to Dr. Hamo by Dr. Bohannon, who noted in July 2007, that her
> back pain was better in intensity and frequency.  She later was treated
> by Childersburg Primary Care and Dr. Bohannon in September 2007.
> The claimant also went to Coosa Valley Medical Center on September
> 6, 2007, where she complained of constant, sharp, throbbing pain in her
> back.   She was treated with ibuprofen, Flexeril and Lortabs and
> discharged as improved with a diagnosis of acute lumbar strain.  Follow-
> up treatment was at Childersburg Primary Care on September 13, 2007.
> The claimant was continued on those medications and her ongoing
> problems of diabetes mellitus and right carpal tunnel syndrome were
> noted as improved.   During the next several months, she visited the
> Childersburg Primary Care facility with essentially unchanged
> diagnoses.  When seen by Dr. Bohannon on May 1, 2008, the claimant's
> diagnoses remained essentially the same, although Dr. Bohannon added
> neuropathy.  Her diagnoses have remained the same and the medical
> evidence establishes that her treatment has been essentially routine and
> conservative in nature.

(Tr. 24) (emphasis added).  The ALJ found these inconsistencies sufficient to

discredit Ms. McCain's testimony concerning the disabling nature of her pain.

Moreover, the ALJ found it significant that Ms. McCain's reason for leaving

employment had nothing to do with her pain or with any disabling condition: "[I]t is

undisputed that Ms. McCain stopped working due to a business related lay-off rather than because of her allegedly disabling impairments." (Tr. 25).  He also noted that "there is no credible objective evidence of a significant deterioration of the claimant's medical condition since her layoff." (Tr. 25).  Additionally, as the Commissioner aptly noted, "[t]he fact that [Ms. McCain] worked with her allegedly debilitating disability undermines her credibility." (Doc. 9 at 15).

In sum, the court finds that the ALJ correctly articulated and applied the Eleventh Circuit's pain standard, and that his reasoned determination that the standard was not met in this case is supported by substantial evidence.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 1st day of March, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge